## Commonwealth v. Heller

*Joseph C. Mesics*, for Commonwealth.
*Allen H. Krause*, for defendant.

GATES, P. J., April 5, 1968.—On December 8, 1967, the State Dog Law enforcement officer filed an information against defendant, Elwood S. Heller, charging him with having a dog at large upon a public

highway in violation of section 702 of the Dog Law of December 22, 1965, P. L. 1124, 3 PS §460-702.

On January 3, 1968, a hearing was held in the office of the justice of the peace, and defendant was found guilty. Subsequently, we allowed this appeal.

On April 1, 1968, we conducted a hearing at which the law enforcement officer testified on behalf of the Commonwealth, and defendant testified on his own behalf.

Section 702 of the Dog Law of December 22, 1965, P. L. 1124, art. VII, sec. 702, provides as follows:

"It shall be unlawful for the owner or keeper of any dog to fail to keep at all times such dog either (1) confined within the premises of the owner, (2) firmly secured by means of a collar and chain or other device so that it cannot stray beyond the premises on which it is secured, or (3) under the reasonable control of some person, or when engaged in lawful hunting or field training accompanied by an owner or handler".

From the testimony at the hearing, we learned that defendant Heller owns a 103 acre farm in North Annville Township, Lebanon County, Pa. Bisecting his farm for a distance of one half mile is a two-lane rural macadam road. On the north side of the road is defendant's dwelling and some outbuildings. On the south side of the road and immediately across from the dwelling is a barn and other farm buildings. The house sets 25 feet north of the road, and the barn sets 40 feet south of the road. Approximately 40 acres of the farm lie on the north side of the road, and the remaining 63 acres lie to the south of the road. There is pastureland on both sides. Heller's nearest neighbor to the west lives one-tenth of a mile away, and his nearest neighbor to the east lives four-tenths of a mile away. Mr. Heller is engaged in farming. More particularly, he is a dairy farmer but also has chickens. He is a married man and he lives with his wife and

nine children. In addition to cattle and chickens, he owns a two year old mongrel dog. Heller's dog is more than a family pet, although he is that also. Several times each day the dog helps the Heller children take the cows from the barnyard to pasture after milking. At the end of the day, he helps the children bring the cows in from pasture to the barn. He is trained to collect straying animals and to bark at their heels to accelerate their movement. On the farm this dog has additional duties. He protects the chickens from predatory animals such as skunks, possums, raccons, and the like. He acts as a guardian and protector of the Heller children. When not engaged in these specific duties, he acts as a general watchdog. He has no known vicious propensities.

The many duties assigned to this working member of a farm family are apparently performed by him with efficiency and dispatch. Those unfamiliar with farm life in this area might be surprised to learn of the usefulness of a dog. It is a fact that a dog is a useful animal and most farmers have at least one to perform these and similar duties.

On the day of the alleged violation, this dog was observed on the highway somewhere in the area between the house and the barn. The dog, of course, did not testify at the hearing, so we do not know precisely what was on his mind or where he was going at the time. In that this dog was not described as an idle beast, we can fairly assume he was about his business as a farm helper. We do know that Mr. and Mrs. Heller were about the farm premises, although they were not observed by the officer in the general vicinity of the dog.

It is the contention of the Commonwealth that the dog was not confined to the Heller premises, because it was in fact on the highway, even though they concede that the Heller farm itself is bisected by the road.

It is evident that the object of section 702 is to prevent dogs from running at large by compelling owners to confine them to the premises of the owner or keeping them under reasonable control. We understand the concept of "running at large" to mean an animal wandering, roving, or rambling at 'will and unrestrained. We do not believe that Heller's dog, at the time he was observed, was so engaged. We believe a fair and reasonable inference to be that the animal was going about his business crossing the highway from one portion of Heller's farm to another. The animal was one-tenth of a mile away from the nearest neighbor to the west and four-tenths of a mile away from the neighbor to the east. We do not believe the evidence here reveals a dog running at large.

Nor are we of the opinion that the legislators intended that farmers confine dogs to their premises by the erection of a suitable fence. A few strands of wire may be sufficient to restrain cattle, but it would take much more of a fence to restrain a dog. We are of the further opinion that an owner who has trained his dog to stay upon the farm premises and to respond to the human voice and not to stray upon the lands of others is under the reasonable control of the farmer, even though he may not be in sight of the animal itself. Whether in a given case physical or moral power over the dog is necessary depends upon the dog's nature, age, character, habits, discipline, and use at the time. Both Mr. and Mrs. Heller were about the farm property at the time. The dog was at or near the house and the barn where his duties were ordinarily performed. It does not appear that he was wandering or roving or rambling at will. Consequently, even though we cannot say that the highway dividing the farm property was the premises of defendant Heller, we are of the opinion that the dog was under the reasonable control of Mr. Heller and consequently not in violation of section 702.

If we were to literally construe section 702, we would be effectively removing the dog from the farm family. The cost of fencing in a dog on an average size farm is prohibitive. A farm dog cannot perform the duties it is trained to do, if it must do them with a human being hanging on the other end of a chain. A dog is of little value in protecting the other farm animals if the dog must be watched by a human being while the dog is watching for marauding animals. We do not believe that the legislators intended an absurd result such as would follow a literal and strict interpretation of this section. Consequently, under the facts in this case, we are of the opinion that section 702 was not violated by Elwood S. Heller. Consequently, we find that he is not guilty.

ORDER

And now, to wit, April 5, 1968, after hearing, we find defendant not guilty and direct the County of Lebanon to pay the costs. The appeal bond is hereby voided.